NOT FOR PUBLICATION                              (Docket No. 56, 57, 60, 65)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                                :
MICHAEL JOHNS,                  :
                                :
           Plaintiff,           :    Civil No. 04-0624 (RBK)
      v.                        :    OPINION
                                :
STANLEY NUNN, et al.,           :
                                :
           Defendants.          :
_____ :
```

**KUGLER**, United States District Judge:

This matter comes before the court upon cross-motions for summary judgment by Defendants Stanley Nunn, Director of Gloucester County Department of Corrections, et al., ("Defendants") and Plaintiff Michael Johns ("Johns"), Johns' motion to file an amended complaint, and Johns' motion in limine. For the reasons set forth below, Defendants' motion for summary judgment will be granted, Johns' motion for summary judgment will be denied, and Johns' motion to amend his complaint will be granted. Johns' motion in limine will be denied as moot.

**I.    Background**

Johns brings the present civil rights action under 42 U.S.C. § 1983, alleging unconstitutional treatment during a temporary imprisonment in Gloucester County Jail from January 29, 2004, through April 1, 2004. Johns, presently an inmate at the State

Correctional Institution at Smithfield in Huntingdon, Pennsylvania, filed a complaint in February 2004, with three other prisoners, Richard P. Doyle ("Doyle"), Steven Byerley ("Byerley") and Joseph P. Stell ("Stell"), complaining about the conditions at Gloucester County Jail. Specifically, they alleged overcrowding, lack of hygiene supplies, insufficient air circulation, improper food handling and portions, and a lack of smoke detectors. They also alleged that Defendants overpriced mailing stamps, charged VCCB on commissary purchases, and required inmates to sleep on the floor without mattresses.

On April 21, 2004, this Court filed an Order requiring plaintiffs to complete *in forma pauperis* applications or remit the $150.00 filing fee. Plaintiffs Johns and Byerley submitted adequate *in forma pauperis* forms and were granted permission to proceed without prepayment of fees. However, Doyle and Stell failed to respond and were dismissed from the suit in the Court's Order of October 19, 2004 ("October Order").

Also in its October Order, this Court analyzed the appropriateness of a *sua sponte* dismissal pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e. The Court found that, even construing the complaint liberally in favor of plaintiffs as required by Haines v. Kerner, 404 U.S. 519, 520 (1972), plaintiffs had failed to state a claim. Instead of dismissing the suit, the Court granted Johns and Byerley leave to

file an amended complaint. In compliance with this Order, Johns filed the first amended complaint on December 3, 2004. Byerley failed to file an amended complaint, however, and this Court dismissed him from the suit on December 17, 2004, leaving Johns as the sole remaining plaintiff.

Johns filed a motion for leave to amend his complaint on May 9, 2005. The Honorable Ann Marie Donio granted his request, and Johns filed a second amended complaint. On July 11, 2005, Johns filed another motion to amend his complaint on behalf of former-plaintiff Stell. Judge Donio denied this request on the basis that Johns lacked standing to assert Stell's claims. Johns filed yet another motion for leave to amend his complaint on July 28, 2005, asking to expand his statement of facts.

Because this Court now grants Johns' motion to amend his complaint for the reasons set forth below, and because the Court finds that Defendants are entitled to summary judgment even when the facts are viewed in the light most favorable to Johns, the following allegations are taken from Johns' third amended complaint, filed July 28, 2005. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Johns was committed to Gloucester County Jail on January 29, 2004. At that time, he was issued a jumpsuit and shoes but was not given a mattress, blankets, sheets, or toilet products. He spent the first two days of his incarceration in a room known as

the "Fish Bowl," which contained no toilet or fresh drinking water. Because the cell was overcrowded, Johns had to sleep on the floor without a mattress. After two days, Johns was moved to a different cell where he slept on the floor without a mattress for another eight days. He claims that sleeping on the floor caused him to contract the flu and a rash on his chest, diagnosed as "spongiotic dermatitis." The prison medical facility prescribed cold pills, but Johns claims he never received any medication. Johns also alleges that he had to eat many of his meals in the cell with the door locked. On the occasions when he was permitted to eat in the dayroom, Johns had to eat his meals on the floor for lack of chairs and tables. Johns also alleges inadequate legal resources, including an insufficient legal library.

In addition to these claims, Johns describes incidents of alleged physical and verbal abuse by Corrections Officer John Scott Rambo, evidently retaliating against Johns for a letter he wrote to the Gloucester County Newspaper about conditions in the jail. Afterwards, Rambo told him, "Cold food, your ass is lucky your [sic] even eating at all" and "[w]e got ways of dealing with your kind." (Pl.'s 3d Am. Compl. ¶ 14.) Johns also claims that Rambo "would come into the plaintiff's cell slapping his feet while laying down on his bed and stating nasty things like: "Oh! You told internal affairs on me you will pay" (Pl.'s 3d Am.

4

Compl. ¶ 18) and "I'm back mother f-ckers you can't get rid of me that easy." (Pl.'s 3d Am. Compl. ¶ 21.) On April 1, 2004, Johns was transferred out of the jail.

**II.  Standard**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331. If the moving party has not fully discharged its initial burden, its motion for summary judgment must be denied. Id. at 332. If the moving party satisfies its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

5

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). In so doing, the Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints 'so as to do substantial justice,' keeping in mind that pro se complaints in particular should be construed liberally.") (quoting Fed. R. Civ. P. 8(f)). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Morse, 132 F.3d 902.

### III. Amended Complaint

Johns now moves for permission to file a third amended complaint, further expanding and elucidating his statement of facts. This is Johns' fourth motion to amend his complaint.

Where a plaintiff has already amended his complaint or defendants have filed an answer, the plaintiff may further amend his complaint only with leave of the court. Fed. R. Civ. P. 15(a); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Under Federal Rule of Civil Procedure 15(a), leave to amend should be

"freely given when justice so requires." Fed. R. Civ. P. 15(a); Foman v. Davis, 271 U.S. 178, 182 (1962) (instructing courts to permit amending freely to afford plaintiffs the opportunity to test claims on the merits). In addition, courts are to accord pro se plaintiffs greater flexibility in amending their complaints. See e.g., Frasier v. General Elec. Co., 930 F.2d 1004, 1008 (2d Cir. 1991).

However, the United States Supreme Court has noted that the district courts have substantial discretion to deny motions to file amended complaints in the event of bad faith, undue prejudice to opposing parties, futility of the amendment, or "repeated failure to cure deficiencies by amendments previously allowed." Davis, 271 U.S. 182; In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.").

As discussed below, Johns' amended complaint does not state a cognizable claim. Consequently, the amendment is futile and, as a third amended complaint, constitutes a repeated failure to cure deficiencies, sufficient to warrant denial of Johns' motion to amend. Nevertheless, Johns has shown no bad faith or dilatory motive in requesting to amend his complaint, and Defendants have not opposed Johns' motion. Furthermore, no prejudice would inure to Defendants from granting leave to amend in this instance.

Accordingly, this Court will exercise its discretion in granting Johns' motion to amend and will address Johns' third amended complaint for the purpose of deciding the parties' cross-motions for summary judgment.

## IV.  Motions for Summary Judgment

In his third amended complaint, Johns alleges constitutional violations on the basis of: (1) Defendants' failure to provide an adequate legal library; (2) conditions of his incarceration; and (3) interactions with Defendant Rambo. Johns' amended allegations do not resolve the flaws of the original complaint, and Johns has failed to set forth any actionable claim that would create a genuine issue of material fact.

### A.  Legal Library

In its October Order, this Court found that Plaintiff's "access to courts claim" was inadequate for failure to allege past or imminent "actual injury." Johns now alleges, "At the time of the plaintiffs incarceration at the Gloucester County Jail he was unaware of the laws of the U.S. Constitution and civil law. The plaintiff did try using the law library after two weeks of waiting to only find outdated book and no supplies or reference to litigate." (Pl.'s 3d Am. Compl. ¶ 11). This claim does not allege an injury resulting from the inadequate legal resources, and must therefore be dismissed.

It is well established that prisoners have a constitutional

8

entitlement to "adequate, effective, and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817, 828 (1977). This right of access stems from the First Amendment right to petition and the due process clauses of the Fifth and Fourteenth Amendments. McDonald v. Smith, 472 U.S. 479, 482 (1985) (holding that the right of access to the courts is an aspect of the First Amendment right to petition); Procunier v. Martinez, 416 U.S. 396, 419 (1974) ("[D]ue process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to . . . seek redress for violations of their constitutional rights."). To satisfy their constitutional obligations, prisons must provide "adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 822.

Nevertheless, to have standing to bring suit for deprivation of the right to access, a plaintiff must allege that the insufficient resources caused him past or imminent "actual injury." Lewis v. Casey, 518 U.S. 343, 351 (1996) ("The inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997) (affirming district court's entry of summary judgment against pro se prisoner plaintiff for failure to allege an actual injury in access-to-courts case). Examples of actual injury include, "a complaint he

9

prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known" or "he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." Lewis, 518 U.S. at 348-51, 354-55 (1996). Without any such allegations of injury, a prisoner plaintiff's claim for insufficient access to legal resources must be dismissed.

Accordingly, because Johns has neither alleged any actual injury arising from the lack of legal resources during his sixty-three day stay at the jail, nor provided evidence of such an injury, Defendants are entitled to summary judgment on Johns' access-to-courts claim.

**B.   Conditions of Confinement**

Johns also claims that the conditions of his confinement violated the Eighth Amendment. Specifically, he alleges that he had to sleep on the floor without a mattress for eight days, resulting in a rash and the flu, that he did not receive the cold medication the medical facility prescribed, that he had to eat in his cell or on the floor in the dayroom, and that he had to spend two days in the "Fish Bowl," which did not contain a toilet or fresh drinking water. These claims are not significantly different than those this Court found to be inadequate in its

October Order.

Courts apply a two-part test to determine whether inadequate prison conditions rise to the level of an Eighth Amendment violation. Liles v. Camden County Dept. of Corrections, 225 F. Supp. 2d 450, 457 (D.N.J. 2002) (citing Farmer v. Brennan, 511 U.S. 825 (1994)). An Eighth Amendment violation requires: (1) a sufficiently serious constitutional deprivation; and (2) deliberate indifference by prison officials.[1] Id.

To be "sufficiently serious," an alleged act or omission must result "in the denial of 'the minimal civilized measure of life's necessities'" or "the wonton and unnecessary infliction of pain." Id. (quoting Farmer, 511 U.S. at 834 and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Consequently, there is an Eighth Amendment violation where prison officials fail to "ensure that inmates receive adequate food, clothing, shelter, and medical care" or do not "take reasonable measures to guarantee the safety of the inmates." Id. at 457 (quoting Farmer, 511 U.S. at 832 (citations omitted)). Similarly, "deliberate indifference to serious medical needs," such as the denial of treatment that would result in a "life-long handicap or permanent loss," constitute constitutional violations. Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003).

---

[1] Because this Court now finds that Johns's allegations are not sufficiently serious, it will not reach the question of deliberate indifference.

However, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society" and do not violate the Eighth Amendment. Rhodes, 452 U.S. at 347. Allegations that do not establish "genuine privations of hardship over an extended period of time" are not cognizable claims. Bell v. Wolfish, 441 U.S. 520, 542 (1979). Thus, there exists an Eighth Amendment violation where "inmates are recruited to serve as armed guards, four to eleven inmates are crowded into windowless 8' x 10' cells during periods of punitive isolation, those inmates sleep on floor mattresses infested with hepatitis and other infectious diseases, and the inmates receive only 1,000 calories of 'grue' to eat each day," but there is no such violation where "inmates have less living space than experts deem appropriate for their physical and mental health, and the prison houses more inmates than it was designed to hold." Atkinson, 316 F.3d at 272 (citing Hutto v. Finney, 437 U.S. 678, 682-83 (1978) and Rhodes, 452 U.S. at 348-49).

Johns has failed to allege conditions that could be considered cruel and unusual. No construction of Johns' claims can amount to a "serious deprivation of basic human needs" or failure to provide "the minimal civilized measure of life's necessities." Id. Eating in a locked cell and sleeping on the floor for eight days simply does not rise to the level of a

"wonton . . . infliction of pain." Rhodes, 452 U.S. at 347. Similarly, two days in a cell that does not contain a toilet or drinking water is not a constitutional violation as long as inmates were not denied access to bathroom facilities. Nor does the failure to provide cold medication qualify as a "serious medical need" that could result in a "life-long handicap or permanent loss." Atkinson, 316 F.3d at 272-73.

At their worst, the alleged conditions constitute minor discomfort so temporary as to be inactionable under the Eighth Amendment. Johns was incarcerated in the Gloucester County Jail for a total of sixty-three days. Only two of those days were spent in the Fish Bowl and only eight days were spent without a mattress. See Hutto, 437 U.S. 678, 686-87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of "grue" might be tolerable for a few days and intolerably cruel for weeks or months.").

Furthermore, it appears from Johns' own allegations that Defendants were receptive to his complaints, changing their policy to permit prisoners to eat in the dayroom, authorizing Johns to visit the medical department after putting in a "sick-call" request, permitting Johns to purchase hygiene supplies at the commissary, moving Defendant Rambo from Block 2-E for two weeks after Johns' wrote a grievance, and reassuring Johns'

13

mother that he was safe. (Pl.'s Mot. Sum. J., filed Sept. 8, 2005.) Johns alleges no conditions that were so inhumane, unsanitary, dangerous, or objectively cruel as to be unconstitutional.

Accordingly, because Johns has not alleged "sufficiently serious" conditions that would violate the Eighth Amendment, Defendants are entitled to summary judgment on Johns' conditions of confinement claims.

**C.    Defendant Rambo's Harassment**

Lastly, Johns alleges physical and verbal abuse by Defendant Rambo, a corrections officer at the Gloucester County Jail. Specifically, Johns alleges that Rambo made comments such as, "Cold food, your ass is lucky your [sic] even eating at all," "We got ways of dealing with your kind," "Oh! You told internal affairs on me you will pay," and "I'm back mother f-ckers you can't get rid of me that easy." Johns also claims that Rambo came into his cell and "slapped" his feet. These incidents do not suggest a level of excessive force or verbal harassment sufficient to establish an actionable constitutional violation.

Although excessive physical force may amount to cruel and unusual punishment even if the victim does not suffer serious injury, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9-10, 4 (1992) (citing Johnson v. Glick,

14

481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")). Where the physical force is *de minimus*, it is not "cruel and unusual" unless it is of a sort "repugnant to the conscience of mankind." Hudson, 503 U.S. at 4 (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)); Green v. Thoryk, 30 F. Supp. 2d 862, 864 (E.D. Pa. 1998) (holding that throwing a bar of soap at an inmate is not an injury rising to the level of a constitutional claim); Barber v. Grow, 929 F. Supp. 820, 822 (E.D. Pa. 1996) (holding that causing minor injuries by intentionally pulling a chair from under an inmate did not violate the Eighth Amendment). In other words, physical force amounting to an actionable tort claim may not be enough to qualify as a claim under the Eighth Amendment. Williams v. Mussomelli, 722 F.2d 1130, 1133 (3d Cir. 1983).

Under this standard, Johns' allegation of foot slapping is no more than a *de minimus* "malevolent touch" and does not amount to a constitutional violation. Johns did not allege that any harm, physical or otherwise, resulted from the foot slapping, nor did he allege that it was more than a single incident.

Nor do Rambo's statements and threats amount to a cognizable Eighth Amendment claim. While "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society," Hudson v. Palmer, 469 U.S. 517, 528 (1984),

15

intermittent verbal harassment does not violate the Eighth Amendment. Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987); Rivera v. Goord, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (holding verbal harassment and vulgar language do not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993) (noting same); Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993) (holding that "mean harassment" is not a constitutional violation).

Similarly, although threatening language accompanied by the threatening use of a weapon and outrageous conduct by prison officials may be actionable, Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992), threatening language and gestures alone do not violate the Constitution. Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (holding that a threat to hang a prisoner was not a Eighth Amendment violation); Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992) (finding that verbal threats alone do not ordinarily constitute constitutional violations).

Rambo's alleged statements amount to nothing more than inappropriate taunts and threats. None of Rambo's statements were accompanied by the brandishing of a weapon, nor were the alleged statements more than isolated and occasional incidents. Consequently, Johns has not alleged a statement or action that would rise to the level of a constitutional violation, and Defendants are entitled to judgment as a matter of law on Johns'

claims of physical and verbal abuse.

The accompanying Order shall issue today.

Dated:  11/17/05          S/Robert B. Kugler
                          ROBERT B. KUGLER
                          United States District Judge